And we will move on to the second case on the calendar for argument today, and that is Waller v. Rogers, case number 23-16152. I will now turn to the second case on the calendar for argument today, and that is Waller v. Rogers, case number 23-16152. I will now turn to the second case on the calendar for argument today, and that is Waller v. Rogers, case number 23-16152. You may proceed. Good morning, Your Honors. Taylor Getman on behalf of Appellants Danielle Waller, Susan Spencer, and Margaret Harvey. I'm appearing from Wingert, Grebbing, Brubaker, and Jeske, and the partner on this case who's been working with me is Steve Grebbing. So I believe, and I believe our briefing has thoroughly shown, that this case comes down to a lack of fairness. The court has, the district court, throughout the process when it granted the motion to dismiss against my clients, overextended several different doctrines and other policies in a manner that just isn't permissible. Well, counsel, can I just tell you where the heart of my question is here? It isn't so much what the district court did, but how can either, I mean, how can any federal court step into these issues that were already decided in the probate court? So maybe you could focus your argument on that, because my overarching concern is that I don't know how we can grant you relief that wouldn't open up the floodgates to collateral challenges to probate decisions, and that would be a disaster under the law and is not permissible. So how do we get around that? And while you're answering Judge Nelson's question, would you also explain why didn't you appeal this question to the district court of appeal in California? Yes. So first off, my clients didn't believe that they were going to be precluded from these claims through that process. So that process was purely a trustee asking for instructions under probate code 17200, and that provision specifically under subsection 20 refuses their standing. It says that they, acting as creditors, don't have standing. That can't be correct, because at least some of the beneficiaries here did participate in that action. Yes, they did earlier in the action, and at the time when the instructions were being sought, they had already been distributed there. So two of them were beneficiaries under the spousal trust, and all three of them were beneficiaries under the family trust. So the two who were given notice of the instructions under the spousal trust, they had already been given their distribution. So arguably they had already lost their standing as beneficiaries in that action. But weren't they arguing that the funds were commingled from the spousal trust into the family trust? Yes, that was their belief. They had just found out about the family trust, and they believed and had gone to Ms. Rogers saying that the funds were commingled, and they believed that she knew or should have known that those funds were commingled, but she didn't adequately. I take it they're not lawyers, so they were trying to figure this out as lay people. Yes, and in fact that's another issue that was going on, which goes to we don't believe that this issue was actually litigated by the probate court. Before you get to that, let's talk about where they were representing themselves, but nobody was legally trained. Is that the case? So Ms. Waller had filed an ex parte seeking to continue the hearing so that she had obtained counsel and named him, and she was seeking to continue that trial and hearing so that her counsel could appear. But because she had failed to pay the proper filing fees, it was rejected, and so the court went forward without granting her that counsel. But hadn't she had like four or five months in order to get counsel before the hearing occurred? I don't think she had notice four or five months beforehand, but she wasn't able to get her attorney before that point. That I understand. Yes. Okay. All right. But I'm still not sure you've answered our question about why did they not, why did your clients not exhaust their appellate remedies before the California Courts of Appeal before coming to federal court? So their belief was that these issues are completely separate, so that kind of goes into the Rooker-Feldman and issue preclusion. So the issue in the probate court was instruction saying they don't have to continue looking into the reimbursements and that they could make those reimbursements, whereas our claims. But counsel, if they're wrong under their view of the law, that doesn't save them, does it? If as lay people they just didn't understand. I mean, it would because so in this case they're bringing different claims. This is a breach of fiduciary duty. This is an adversarial claim. This is not an identical claim to what those claims were. So the court did grant permission to disperse those funds and all of that. That's not what we're, we're not trying to unwind that. We're saying that there was a breach of fiduciary duty and that Ms. Rogers should not have even asked the court to grant those disbursements because she had not done her proper duties by making sure. But she asked the probate court to determine whether she had done her proper duties and the probate court said you had. So how can we grant you relief without undermining the probate court's decision on that point? So the probate court found that Ms. Waller, my client, had not provided sufficient evidence to find that she hadn't done her due diligence, hadn't done the proper procedures. Right, because that was, that was the forum for that evidence to be brought. Yes, Your Honor. But that's exactly the problem I'm having is you don't get two bites of the apple where you get to go into probate court and submit some evidence and then when you lose then come back and say, well, I'm going to, now I'm going to challenge it in federal court. That's the whole concern that we have here. Well, the issue here is exactly that. In that case, they didn't have standing as parties to it. They were just objectors. So they didn't have the opportunity to conduct any discovery to support their claims. Wait a second. Under California law, aren't the beneficiaries of the trust or of an estate are entitled to appear and lodge objections, are they not? They are, but they were not appearing as the beneficiaries of the spousal trust. They were appearing as beneficiaries, creditors from the family trust. But does it matter if they're asking essentially the court to disgorge or enter orders of disgorgement, returning the funds that have already been distributed to the charities so that they can increase the race of the family trust? So that, they are permitted to bring that. In fact, one of the cases that the district court cited to, Osborne v. Griffin expressly says that any disgorgement claims, so even if there are issues with asking for the funds to be returned, which I understand that that would seem to unwind that, they're allowed to ask for disgorgement in an equal value or the value of what those profits would be today. But under California law, once the trustee asks for instructions, doesn't the probate court have the jurisdiction, the power to enter all those types of orders that you've just described for us, that you're now asking us to enter? So the court does have all of that power in regards to asking for instructions, but the court did not have the power to refuse the kinds of claims that we're bringing now saying, well, what about the, like, this is an adversarial proceeding that they're bringing. That was not an adversarial proceeding. They did not have the opportunity to do discovery. So though it was proper for Ms. Rogers to request instructions, it was, we're claiming it was improper for her to ask in the first place because she hadn't done her duty to the beneficiaries of making sure that there was no family trust commingling. But now we're getting back to the rulings that the court actually made. As I understand it, the court made two rulings. One was that there was no commingling, and secondly, that she had sufficiently discharged her duties of investigation in order to resolve the question of whether or not there were other assets. Yes, Your Honor. But it made those decisions on the basis that insufficient evidence had been provided otherwise. So in other words— Proof problem. That's not a jurisdictional problem. But they didn't have the standing to do the discovery and other processes that they should, in fairness, have been given the opportunity to bring. So is it your position that had they asked for discovery, the Superior Court was either without— They wouldn't have had standing to even ask because they were asking as creditors, not as beneficiaries. So they didn't have— It's both, isn't it? No, because— They are beneficiaries of both estates. Yes, but they weren't—their objections were being made as creditors. They weren't taking issue with the distributions that were made to them as beneficiaries. And also, I keep—I've this whole time been saying them. This is all two of the three. The third one was not given any opportunity, any notice, had no involvement whatsoever in the probate, and is now being held in privity merely— So your position is that she never knew that any of this was going on? She was not given any notice. She did not have any—none of the documents were sent to her. None of the notice was sent to her. She had no opportunity to— Did she not talk to her siblings? She lives in Ireland, and they're from— But we are telephones to Ireland. Yes, I mean, but privity cannot be decided based on your relation to the other person. That's exactly what privity is. We look at how the individuals stand in relation to one another, and if they all have the same standing as beneficiaries of the trust, then there's privity. So based on Manning v. South Carolina Department of Highway and Public Transportation, for res judicata purposes in privity, it is not about what the relationship between the persons are, but whether their interests are so identical that you are their virtual representative. How are they different here? Because she was not—she didn't even know— Ms. Harvey from Ireland had no reason to believe that she would be bound to decisions based on the spousal family trust when she had no ties to it. Okay, but how would her interests—the rule you just read, how would her interests be any different? They're exactly the same. Are all three of these individuals in the exact same position via v. the trust? Well, they're not quite in the exact same position because whereas I do agree that Ms. Waller and Ms. Spencer did not have any reason to believe that they were going to be unable to claim that Ms. Rogers' actions were improper in a separate proceeding, Ms. Harvey had no reason to believe she would be bound by decisions made in the family— That's not the question I'm asking. The question I'm asking, when we look at this, the question is usually whether the party who wasn't there was in privity. What that means is her interests, the arguments that she would have made had she been there would have been the same as everybody else. What arguments would she have made differently? I don't see them because they all had the same rights via v. the trust. I mean, that goes back to the issue—I mean, I see your point. I think that goes back to the issue of were they given the opportunity to properly do this discovery. I understand. I know you have. So that's what this comes down to is you think discovery was denied and therefore— But the problem is if you're right about that, then everyone could be bringing challenging probate decisions here. What is your limiting principle here? Well, in this case, the probate court should have done a constructive trust and let them decide the adversarial issues and then come back and make the decisions. What additional evidence would they have offered if they'd had the opportunity? I don't know. They weren't able to conduct discoveries, so they weren't able to get that evidence. Your Honor, I'm sorry. May I reserve the rest of my time? Sure. Yeah. Thank you. Thank you. Thank you. Mr. Gause, go ahead. Yes. May it please the Court. Arthur Gause from Coffman-Dolowich with me at Council table as Angela Killian. And we represent all appellees in this matter, including Pamela Rogers, the trustee of the Barbara Watson George Revocable Trust, which in the papers we've referred to colloquially as the Barbara Trust, and to draw the distinction between— Total amount of money that was dispersed to the charities? Your Honor, I don't know the amount that was dispersed to the charities because we've represented at the trial court level only Pamela Rogers, the trustee. And I think that the amount of money that was— Your client doesn't know how many checks she wrote and for what amount? It's in the millions. We know— Oh, it's in the millions. Okay. It's a significant amount of money. That was not clear to me. Sometimes you guys argue all these things and we have absolutely no idea what the fight is about, how much money is involved. I take that under advisement, Your Honor, and I think that the amount of money is— the focus was not on the amount of money because the focus is the jurisdictional power of the two courts at issue. And there's a distinction to be drawn here between the expansive power of the probate court to decide these issues that arise under the auspices of a trust or, in another case, a will, and the limitations of the federal court with their ability to examine these issues. I understand that. And maybe it's just idle curiosity on my part, but we do like to have some feel for whether or not this is a big case or a small case or— Well, I think framed in that way, Your Honor, I think we can say that this is a big case. Okay. All right. Thank you. Given the setting, I think we can assume that this is a big case. All right. And I think that—but just drawing it back to the jurisdiction, I think that just walking through the State court's jurisdiction here is worthwhile. So what about this idea that they couldn't get discovery? That seems to be—I don't know if it's their strongest argument, but it's the one that they're focusing on is this idea that they were only there on a limited purpose. They weren't really there representing the full panoply of the interest that they had. And I think that that's—I think that that's a valid point to raise. The issue is that under 17—under Probate Code 17-201.1, discovery is permitted in the injection procedure. 17-200 sort of— So they just didn't ask for it? It wasn't conducted. They didn't ask for it. But they could have. Your position is they could have, but they didn't do it. They could have. Even in the—they didn't have to ask for an adversarial proceeding, even when the questions were asked by—when Rogers asked the questions, they could have asked for discovery even in that limited proceeding. Under 17-201.1 Probate Code California, there is an express statutory permission for discovery in questions relating to the administration of trusts under 17-200. So then what about the—one of the siblings in Ireland who— you agree that she didn't get notice of this? Notice was mailed to Ireland, and I— To the country? To the— I don't know why they didn't show up. The government officials didn't come in. I know. We put it in a green envelope. This is a big case. I think they would have liked the money. That we did mail it to what we— the best information was to the proper address in Ireland, and we assumed that the Irish Postal Service took it from there. Right. Okay. So you— But I guess if she didn't get notice, does that put her in a different position? Because her claim then could perhaps be, I'm smarter than my siblings. I would have known that I couldn't have gotten discovery. I would have been able to flesh these out. They didn't do it. I should have had a seat at the table. Well, and I think to the extent that you can draw that distinction, I think that draws back to the privity point, is that these three siblings, despite their different situations and maybe different orientations towards discovery, theoretically, are still holding the same interest in the disbursement of the trust. They're holding it at slightly different percentages, but they're still—their interest is the same. Residual beneficiaries of the— or they're beneficiaries of the David Watson and Barbara George Trust, which we refer to colloquially in the papers as the family trust. She is a beneficiary in the same— in the same order of distribution, which is to say that her interest is identical. And that is, you know, drawing it back to the discovery issue, the fact that she could have, if she had received notice, get discovery, doesn't change her position because her privies had the opportunity to conduct discovery and didn't. And then, again, drawing into the question of the State court's jurisdiction, there's the broad general jurisdiction of the probate court, which allows the probate court to, in matters where it's appropriate, they can appeal to the State court, or they can ask for transfer to the State court. There was recourse in that regard. There was, as we mentioned earlier, there was an—there was the California State appellate route for recourse here. None of those options were taken, leaving us with this complaint that was filed four years and 10 days after the distribution—after the order on distribution in the probate court, which is to say that we have a— Isn't the probate court just an arm of the Superior Court? I mean, it was the Superior Court judge who signed the orders. Yes, that's exactly what it is. But it's what it is. It is a—it is just a Superior Court— It's like when Federal courts sit in Admiralty. We don't have any silver oars anymore that we display on the bench, but that's how you knew that the Federal court was hearing an Admiralty matter. Well, I mean, to the extent that we should have some similar token in California State court denoting a probate court matter, I think that would be very, very helpful. What I think—but what I—but what it doesn't take away is from the statutory clarity of the probate court to administer both wills and specifically trusts, which is at 17-200, you know, at SAC. And that includes discovery. That includes a notice provision under 17-203. That includes an opportunity to be heard, which there was—which is at Probate Code 1043A. And there was a hearing. There were two hearings on this. The evidence was presented, and the matter was heard. So they have—some claims appear not to be completely covered by decisions in the probate court. For example, I believe the plaintiffs here are arguing that the charities tortiously interfered. I'm not exactly sure the theory, but, you know, by, I guess, pressuring your client, Rogers, to disburse the funds to them. Why couldn't those claims go forward? Well, I think there's a couple reasons. Number one is—and I think it shows up in the way that you posed the question— is that what they would be asking to do, what the claims in essence— well, not in essence, in actual fact—ask the federal court to do is unwind the administration of the trust. That is, it is inescapable to seek a reapportionment of funds based on the distribution— even if the agreement said, look, only 10% of the remaining funds are supposed to be disbursed to the charities, and Rogers just didn't do that and the probate court didn't pick up on that, your position would be their only form of relief would be to appeal that through the state court system. Let's take a hypothetical where the charities, you know, burned the original documents and sent over fake documents, and everybody looked at the fake documents and were like, oh, this seems okay. And they find out later, whoa, there's this huge fraud we didn't know about. Your point would still be the federal court has no jurisdiction over that. That would be a matter for the state court. And that is where Rooker-Feldman, I think, is really important here because what we have is a limitation on the capacity of the federal court to unwind the decisions in favor of state court losers. And I think also— Wouldn't we first have to decide there was commingling before we could order disgorgement? The probate court would have to— Whichever court is going to decide it is going to have to revisit the issue of commingling. Otherwise, you never reach the question of whether or not the distributions to the charities were appropriate. Precisely, Your Honor. And I think that in this particular case, that's extremely relevant because within the ambit of the state court jurisdiction are the questions of the duties of the trustee specifically, and that's at Probate Code 1600 at SEC, and specifically the trustee's standard of care at Probate Code 16040, which is to say that questions about the trustees' obligations and the trustees' standard of care in fulfilling those obligations are necessarily folded into the probate court's jurisdiction and into their ruling. Part of the evidence that was presented here was precisely Pamela Rogers' efforts in determining the source of the race of the trust and whether or not there was commingling. You know, not to put a too fine of a point on it, but in the second petition, and this is at ER 373, Pamela Rogers represented that she reviewed all available records related to Barbara Watson's accounts. She attempted to contact Transamerica regarding the issues related to Transamerica stocks. She contacted Agon to answer questions about the Agon stock. She even looked at unclaimed property records in Hawaii in order to do a full and comprehensive evaluation of where trust race could possibly be. She did a comprehensive look. She asked the probate court to ratify that comprehensive look, and the probate court said yes, which is to say that questions about specifically Pamela Rogers' diligence in fulfilling her obligations as trustee of this trust were asked and answered by the probate court. I do want to address very briefly, because we're here on de novo review, the statute of limitations issue. The issue, the ruling that set this out, or that set this into motion, came on February 13, 2019. Under the probate code, a challenge to a probate court ruling is a three-year statute. The filing here is February 13, 2023, which is four years and ten days after that ruling. It wasn't addressed. I don't remember this being, this was in the briefs? It was raised at the trial court level, and thereafter the parties more or less forgot about it. Oh, so it wasn't argued before us. No, it wasn't before. Well, then isn't that been, I mean, okay.  You're taking advantage of the fact that you have the podium. Well, I do have the podium. So you can make the argument, but our rules are pretty clear that if you don't raise them in the briefs. It was raised very briefly in the brief. I think we dedicated it. We'll go read it again. I mean, sometimes I miss things, but I didn't remember it at all. So that doesn't bode particularly well for you, but we'll go read them again. Sometimes I miss things, too. My gut on this would be that I'm not entirely sure that that statute of limitation would apply. I mean, that seems to be the statute of limitations to challenge in state court, right? Which maybe it would apply. Anyway, we'll go look at it and see. Well, with my last two minutes, I do also want to address the question a bit about the inter vivos trust that the lower court asked us to specifically address because I think it's relevant here. What we have here is a question about whether or not the probate exception applies here. And there's this sort of open question about whether or not the probate exception applies to inter vivos trusts. And I think that that's a valid question, and I think that's one that warrants consideration. The problem here is that we don't have an inter vivos trust because we have an absence of vivos with respect to the settler of that trust. And so what we have here is not an inter vivos trust, but really a will substitute. And, you know, the trial court, I think their reasoning was really right on the mark here, is that what we have here is a trust that, in very real terms, set aside the rules of distribution of property after the decedent's death. And the fact that it was set up as a trust rather than a last will and testament doesn't change the analysis. This is about distribution of property after a trust has become irrevocable. And, therefore, the probate exception is sort of neatly applied here. And to the extent that what we're trying to do is resolve that open question, I think in this case we have facts that can provide sort of a very neat answer. But we wouldn't reach that issue if we decided that res judicata and collateral estoppel apply. No, you wouldn't, but I'm trying to be comprehensive here while I have the podium. All right. And with that, if the court has no further questions, I can relinquish it. Judge Gould, do you have any questions? No. Okay. Thank you, counsel. Thank you. So I want to go back to issue preclusion. It doesn't apply because there was not sufficient fairness. So in this case, if you are looking at the two rulings, the two instructions that the probate code made, they did not decide that there was no commingling. They found that Ms. Rogers had done enough work that they didn't need to continue looking into that issue. So that's not a preclusion. That's not something that it wouldn't be overturned here. Do you disagree with their interpretation? They read a provision, which we'll go back and look at, but it apparently says that you could have sought discovery. Your clients could have sought discovery. That, again, would be in their standing as beneficiaries, not as creditors. So as creditors, that's the claim they were bringing. They were not taking issue with their disbursements. They were taking issue as creditors. So, no, they did not have discovery as creditors. I don't understand. And even if they did. As creditors? I don't even understand what that means. Why were they creditors? Though they happened to be beneficiaries under the spousal trust, their claims that they were raising their objections, they were raising the reason they take issue with these situations were all in the capacity as third parties that were separate and saying, no, you still have our money, our funds, our stock, and you can't disburse that to those people because you owe us still. So in that extent, they're creditors. And as far as being in privity, if you look only the first opportunity to object, Ms. Wallert, she tried to get that ex parte. She was denied the opportunity to continue to get counsel. After she wasn't given the opportunity to have counsel at the second hearing, her sister, Ms. Spencer, or sorry, her mother, Ms. Spencer, came in and tried to make her own objections, and the court said we already decided these, which was before counsel had ever gotten involved, and without counsel. So she was bound to that decision that was made pre-counsel, and then there's no reason that Ms. Harvey would then come step in and be told you are also given res judicata effect. So for that reason, I mean, I don't think that they were given a proper full actual hearing. Counsel, in the Contra Costa Superior Court order of May 23rd, 2018, at the very end, the court rules the petition is granted without prejudice by Ms. Wallert to file a motion. Did she ever file such a post ruling motion? They just did the objections when the second instruction was brought, and those were denied on res judicata grounds. So even though she had counsel, she didn't file a formal motion? That's right, Your Honor. Okay. And then also, as far as discordment is permitted, but seeking— You're over time, though. Okay. You're over time. So, yeah, thank you so much. Thank you. Thank you for your arguments, and we do have the briefs. The case is now submitted.
judges: GOULD, TALLMAN, NELSON